The Chief Justice
delivered the opinion of the court.
Tho complaint before the justice was for a forcible detainer. Upon the trial, the defendant moved for a non-suit because the complainant had given no evidence of forcible detention within the meaning of the act of the legislature. The evidence was reduced to writing and verified by tho attestation of the attorneys of the parties. The justice overruled the motion and a verdict and judgment were rendered against the defendant.
He now seeks to reverso the judgment and alleges, the facts given in evidence do not constitute a forcible detainer, because there was no proof of force.
If any evidence of force within the meaning of the act was given, this court will not interfere. We do not enter into an investigation of questions of fact. We do not estimate the weight or strength of evidence. But if ,no evidence of force was produced, if all the acts dono by the defendant do not, in legal contemplation, amount to a forcible detention, the justice ought to have non-suited; the jury have erred in applying the law to the fact; and it becomes our duty to relieve the aggrieved party from an illegal and erroneous verdict and the judgment founded upon it.
After the defendant had been upwards of two years in the peaceable and undisturbed possession of the farm in *306 question, the son of the complainant went to him at the farm, and told him he had come up from town to see him. Brick asked what it was about. He said, the old business ; and being desired to explain himself more fully, he said he did not think himself competent and had brought an attorney' with him from Mount Holly, to do it for him; and at his request Brick left the premises and went to a tavern in the neighborhood, where the attorney was. After1 a few words, the attorney demanded the *premises, the manure and the straw, and asked Brick if he would give them up. Brick declined doing so. And thus far all was peace. But then the attorney asked Brick if he had not taken a lease out of John Middleton’s desk. He said he-did not take it. The attorney asked him the same question a second time. He answered his mother had taken it out of the desk and given it to him. Even thus far, no excitement had occurred and nothing like force or threats or violence appeared. But the attorney repeated the question two or three times and then said that Brick did take the lease and he could bring proof of it. And this declaration was several. times repeated. Brick thereupon became very angry and in the conversation which ensued he said he would fight as long as he had a drop of blood in his veins, or as another son of the complainant testified, he would fight while the last drop was in his veins before he would give up the property. On the same or the next day, the complaint of forcible detainer was made to the justice.
In all this case I can find no support for the charge in the complaint that the defendant kept the possession with force and strong hand and menaces and terrifying words spoken and uttered of and concerning the said John Middleton exciting in him fear and apprehension of danger. I find no evidence of such force as constitutes a forcible detainer within the meaning of the statute.
The son acting as- the agent of the complainant was peaceably received by the defendant at the premises. Ho *307 threats or menaces were used there. He peaceably left the premises when requested and repaired to the tavern to hoar the proposed explanation. When possession was demanded, he peaceably, though peremptorily refused; and herein was was no forcible detainer. So far from anything like force or violence on the part of Brick, the witness said he should not have inferred from any words uttered by him before the conversation about the lease, nor from any threats before that time, that Brick would have used violence if the witness had gone upon the farm and taken possession. But when Brick had been goaded into fury by the foul charge of having stolen the lease, once, twice and thrice or oftener repeated, and enforced by an allegation that it could be proved, he used the harsh and violent expression * which has been mentioned and which it would almost seem was the hoped for result of a design to rouse in him a feeling of resentment. I see here a hasty ebullition of passion produced by the agent of the complainant, a spark which he himself struck from the flint, but nothing of deliberate design and measured menaces intended to alarm and terrify and keep off the owner or claimant, and to protect the tenant in his unlawful possession. The case appears to me wholly destitute of evidence to establish the charge of forcible detainer, and, in my opinion, the judgment should be reversed.
Judgment reversed.